UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
BLAIR GARNER,

               Petitioner,

       - against -

WILLIAM LEE, SUPERINTENDENT OF
GREENHAVEN CORRECTIONAL
FACILITY,

              Respondent.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
2:11-CV-00007 (PKC)

PAMELA K. CHEN, United States District Judge:

Petitioner Blair Garner seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 challenging his conviction for, *inter alia*, attempted murder, assault, and robbery. Petitioner filed his *habeas* petition on January 3, 2011. The Court, on December 13, 2016, granted Petitioner's request on the grounds that he was denied effective assistance of counsel based on his trial counsel's failure to obtain Petitioner's cellphone records at trial. *Garner v. Lee*, No. 11-CV-00007 (PKC), 2016 WL 7223335 (E.D.N.Y. Dec. 13, 2016). On appeal, the Second Circuit vacated this Court's judgment and remanded for further proceedings consistent with its decision. *Garner v. Lee*, 908 F.3d 845 (2d Cir. 2018). For the reasons set forth below, Petitioner's application for a writ of *habeas corpus* is denied in its entirety.

## BACKGROUND

The Court assumes the parties' familiarity with the relevant facts and procedural history in this case and refers to them only to the extent necessary for the Court's analysis. In addition, the Court relies on, and incorporates by reference, its December 13, 2016 decision, *Garner*, 2016 WL

7223335, at *1–6, and the Second Circuit's November 15, 2018 decision, *Garner*, 908 F.3d at 848–58.[1]

## I.    Trial

As relevant to the instant order, the Court notes that in addition to the testimony of Karl Keith, the shooting victim, and Petitioner, that has previously been described in great detail, several other witnesses testified at Petitioner's trial including, *inter alia*, Police Officer Gover (Trial Transcript ("Tr."), Dkts. 12-1–6, at 296:20–334:7), Jesse Merkelson (*id.* at 340:20–399:9), Robert Keith (*id.* at 529:21–536:25), and Detective Patrick Walsh (*id.* at 537:14–641:17).[2]  Officer Gover was one of the first police officers to arrive at the scene of the shooting.  (*Id.* at 306:25–307:2.)  He asked Keith several questions, including whether Keith knew who had shot him; in response, Keith identified Petitioner as the shooter.  (*Id.* at 308:7–310:25.)  Keith reiterated that Petitioner had shot him to Detective Walsh, another police officer who later arrived at the scene.  (*Id.* at 542:3–8.)  Jesse Merkelson, a friend of Keith's, testified that he participated in the planning

---

[1] However, the Court does not rely on any evidence introduced, or facts developed, at the February 9, 2016 hearing held in this matter regarding Petitioner's ineffectiveness claim relating to trial counsel's failure to obtain the Petitioner's cellphone records.  *See Garner*, 2016 WL 7223335, at *7, *9–12 (noting that Court was limited to the record before the state court, unless it found the state court's adjudication was unreasonable, and then finding state court's ruling on cellphone-related ineffectiveness claim unreasonable and considering evidence adduced at hearing) (citing, *inter alia*, *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), and *Lopez v. Miller*, 906 F. Supp. 2d 42, 50 (E.D.N.Y. 2012)); *Garner*, 908 F.3d at 860 ("*Pinholster* does not bar a federal habeas court from holding an evidentiary hearing and considering evidence beyond the state court record when it engages in this non-§ 2254(d), *de novo* review.").

[2] Because Petitioner was convicted, the Court construes the facts in the light most favorable to Respondent.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."); *Cruz v. Colvin*, No. 17-CV-3757 (JFB), 2019 WL 3817136, at *12 (E.D.N.Y. Aug. 14, 2019) (citing, *inter alia*, *Jackson* and *Ponnapula*).

of the drug sale but did not go with Petitioner and Keith to purchase the drugs. (*Id.* at 342:22–24, 343:14–23.) Therefore, Merkelson did not witness the shooting. (*Id.* at 375:7–15.) Finally, Robert Keith, a physician's assistant and Keith's father, testified that he saw gunshot stippling on the back of his son's neck while visiting him in the hospital. (*Id.* at 530:24–25, 534:6–15.)

Petitioner's trial lasted for six days. (Exhibits to Reply, Dkt. 12, at ECF[3] 1.) On the third day of trial, a Monday, Petitioner's trial counsel informed the trial court that over the weekend, Newsday had published an article about Petitioner and Petitioner's trial counsel. (Tr. at 418:15–419:12; *see also id.* at 439:8–18.) The article had both a picture of Petitioner and his trial counsel, and a large headline that read "Man Faces 3rd Murder Charge. Acquitted of two incidents in '97." (Petition, Dkt. 1, at ECF 31; *see also id.* at ECF 34.) On the request of trial counsel, the trial court interviewed each juror individually to determine what they had seen or heard about the article and whether their exposure, if any, affected their ability to proceed impartially. (Tr. at 420:4–436:22.) After interviewing each juror, the trial court judge denied Petitioner's motion for a mistrial but agreed to dismiss one of the alternate jurors. (*Id.* at 442:11–443:22.)

## II. State Court Post-Conviction Proceedings

Petitioner contested the trial court's denial of the mistrial motion on his direct appeal. *People v. Garner*, 815 N.Y.S.2d 614 (N.Y. App. Div. 2006). The New York Appellate Division, Second Department ("Second Department") affirmed the trial court's denial. *Id.* at 616. Petitioner also filed a motion pursuant to C.P.L. § 440.10 ("Section 440 Motion"), alleging ineffective assistance of his trial counsel on eight separate grounds. (October 4, 2010 Section 440 Opinion ("440 Opinion"), Dkt. 7-3.) The County Court of the State of New York for the County of Suffolk

---

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

("County Court") denied Petitioner's motion without a hearing. (*Id.*) Petitioner timely filed the instant *habeas* petition on January 3, 2011, arguing that he was entitled to relief on both his mistrial and ineffective assistance of counsel claims. (*See generally* Petition, Dkt. 1.) This Court granted Petitioner's *habeas* petition based on Petitioner's claim that his trial counsel was ineffective for failing to obtain Petitioner's phone records the night of the shooting to use at trial. *Garner*, 2016 WL 7223335. The Second Circuit vacated that judgment and remanded for further proceedings on Petitioner's remaining mistrial and ineffective assistance of counsel claims. *Garner*, 908 F.3d 845.

## LEGAL STANDARD

Section 2254 provides that a *habeas corpus* application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Norde v. Keane*, 294 F.3d 401, 410 (2d Cir. 2002) (internal quotations and citation omitted). "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted." *Johnson v. Williams*, 568 U.S. 289, 301 (2013); *see id.* at 301–02 (explaining that "the presumption that the federal claim was adjudicated on the merits may be rebutted" by either (1) "the habeas petitioner (for the purpose of showing that the claim should be

considered by the federal court *de novo*)"; or (2) "the State (for the purpose of showing that the federal claim should be regarded as procedurally defaulted)").

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005) (internal quotations and citation omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" Supreme Court cases, or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (internal quotations and citation omitted).

A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* (internal quotations and citation omitted). The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)); *see also Eze v. Senkowski*, 321 F.3d 110, 121 (2d Cir. 2003) (observing that where a state court adjudicates a federal constitutional claim on the merits, "we must apply AEDPA deference"). "An unreasonable application occurs when 'the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Finally, "if the federal claim was not adjudicated

on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo.*'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

## DISCUSSION

Petitioner seeks *habeas* relief on two grounds: (1) the denial of a motion for a mistrial, and (2) ineffective assistance of counsel. The Second Department rejected Petitioner's mistrial claim on the merits. *Garner*, 815 N.Y.S.2d at 616. Likewise, the County Court rejected Petitioner's ineffective assistance of counsel claim on the merits. *Garner*, 2016 WL 7223335, at *6 (rejecting Respondent's argument that Petitioner's ineffective assistance of counsel claim was procedurally defaulted); *Garner*, 908 F.3d at 859–60 (affirming district court on this issue). Therefore, the decisions of both courts are entitled to AEDPA deference. *See* § 2254(d); *Eze*, 321 F.3d at 121.

## I. Mistrial Claim

Petitioner argues that he is entitled to *habeas* relief because the trial court failed to grant a mistrial after three[4] jurors acknowledged that they had heard about or seen a prejudicial Newsday article about Petitioner and his trial counsel. (Petitioner's Reply ("Pet.'s R."), Dkt. 11, at 55–59.) "Although '[t]he Sixth Amendment secures to criminal defendants the right to trial by an impartial jury,' 'due process does not require a new trial every time a juror has been placed in a potentially compromising situation.'" *Gouvatsos v. Ercole*, No. 09-CV-1449 (SJF), 2012 WL 3685977, at *13 (E.D.N.Y. Aug. 23, 2012) (quoting *Skilling v. United States*, 561 U.S. 358, 377 (2010) and *Smith v. Phillips*, 455 U.S. 209, 217 (1982)); *see also Montanez v. Tynon*, No. 18-CV-1766 (JPO),

---

[4] Petitioner is inconsistent with respect to the number of jurors that saw or heard about the Newsday article. For the most part, Petitioner asserts that three jurors, Juror 3, Juror 8, and Alternate Juror 3, were potentially prejudiced by the article. (Pet.'s R., Dkt. 11, at 57−59; *see also* Petition, Dkt. 1, at ECF 7. *But see* Petition, Dkt. 1, at ECF 32.) The Court notes that the trial court record indicates that Alternate Juror 1 also saw the Newsday article. (*See* Tr. at 433:19–25.)

2018 WL 6268221, at *11 (S.D.N.Y. Nov. 30, 2018) ("There is a high bar to relief when a habeas petitioner is challenging the denial of a motion for mistrial. On habeas review, the petitioner must show that the denial of a motion for a mistrial deprive[d] him of a fundamentally fair trial.") (internal quotations, brackets, and citations omitted). Since "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote[,] [d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith*, 455 U.S. at 217. "The touchstone for courts deciding such issues on federal habeas review is whether there is fair support in the record for the state court's conclusion that the jurors in a trial would be impartial." *Montanez*, 2018 WL 6268221, at *13.

It is clear that such fair support in the record exists here. The Monday after the Newsweek article was published, the trial court questioned each juror individually as to whether they had "read or hear[d]" anything about Petitioner or Petitioner's case over the weekend. (Tr. at 420:4–10 (Juror 1); 421:7–12 (Juror 2); 422:12–18 (Juror 3); 424:5–10 (Juror 4); 425:6–11 (Juror 5); 426:5–10 (Juror 6); 427:6–9 (Juror 7); 428:4–11 (Juror 8); 429:16–21 (Juror 9); 430:14–19 (Juror 10); 431:14–19 (Juror 11); 432:16–21 (Juror 12); 433:19–25 (Alternate Juror 1); 435:12–17 (Alternate Juror 2); 436:10–22 (Alternate Juror 3).) In response to the four jurors who stated they had been exposed to the article, the trial court further inquired as to whether that juror had discussed what they knew with the other jurors and whether their exposure to the article would prevent them from being a fair and impartial juror. (*Id.* at 422:20–423:9 (Juror 3); 428:12–21 (Juror 8); 434:2–16 (Alternate Juror 1); 436:23–437:22 (Alternate Juror 3).) All four jurors affirmed that they were able to be impartial and render a verdict solely on the evidence before

them.  (*Id.* at 423:4–9 (Juror 3); 428:17–21 (Juror 8); 434:9–16 (Alternate Juror 1); 437:17–22

(Alternate Juror 3).)  After the trial court finished questioning the jurors, Petitioner's trial counsel

moved for a mistrial.  (*Id.* at 438:14–440:4.)  The trial judge denied the motion, and supported his

ruling by stating that

> Number one, I thought that all the jurors were honest and straightforward.  Not one
> admitted to seeing the headline.  The three jurors that saw a picture mentioned
> [Petitioner's trial counsel].  The third alternate, although she mentioned what her
> husband said [about the article], it didn't, in effect, have anything to do with content
> of the article.  And all jurors assured me that they would be fair and impartial and
> . . . would render a verdict solely on the evidence presented in this courtroom.
> Accordingly, I'm denying defense motion for a mistrial.

(*Id.* at 442:11–23.)

"A trial judge's determination of juror impartiality is entitled to a presumption of

correctness, and a habeas court may overturn such a determination only for 'manifest error.'"

*Sullivan v. Lee*, No. 10-CV-425 (CBA), 2017 WL 3634598, at *9 (E.D.N.Y. Aug. 22, 2017)

(quoting *Patton v. Yount*, 467 U.S. 1025, 1031 (1984)).  "The Supreme Court has observed that a

trial court is properly entitled to 'special deference' in this area because it is best situated to make

a determination that 'is essentially one of credibility, and therefore largely one of demeanor.'"

*Martin v. Smith*, No. 09-CV-5515 (SLT), 2013 WL 420102, at *6 (E.D.N.Y. Feb. 1, 2013) (quoting

*Yount*, 467 U.S. at 1038); *see also James v. Walker*, No. 99-CV-6191 (JBW), 2003 WL 22952861,

at *8 (E.D.N.Y. Aug. 28, 2003) ("The trial court has the power to determine the scope of any

investigation into alleged juror misconduct.  In assessing the credibility of a juror's response and

the state of mind of the juror, the trial court has the obvious advantage of actually observing a

juror—a factor unavailable to this court.").

Petitioner argues that the trial court, in finding that the jurors were impartial, erred in two

ways.  First, Petitioner argues that since none of the other jurors mentioned discussing the article,

even though Alternate Juror 3 admitted to discussing the article with the jurors, "the jurors' answers did give reason to question their accuracy, and, thus, the jurors' assurances of continued impartiality." (Pet.'s R., Dkt. 11, at 57.)  Second, Petitioner argues that the trial court failed to ask appropriate follow-up questions about whether the jurors who had seen the picture in the Newsday article, had also read the large, likely prejudicial headline.  (*Id.*)  Both of Petitioner's arguments are unavailing.

Petitioner's first argument fails because the trial court, properly concerned with "prevent[ing] prejudicial occurrences," *Smith*, 455 U.S. at 217, reasonably concluded that the jurors remained impartial when they learned that an article about Petitioner existed without learning about the content of that article.  Though Alternate Juror 3 admitted to discussing with the other jurors that her husband had told her that Newsday had an article about Petitioner (Tr. at 436:25–437:12), she also told the trial court that her husband "took the paper out so [Alternate Juror 3] wouldn't be tempted [to read it]" (*id.* at 436:20–21).  Therefore, the most that Alternate Juror 3 could have told the other jurors is that an article about Petitioner existed; she could not have revealed anything about the content of the article because she had not been exposed to it. (*See* Tr. at 442:15–18 (trial court noting that Alternate Juror 3's husband did not tell her "anything to do with [the] content of the article").)[5]  Without knowing what the content of the article was, the other jurors could not have been prejudiced by it.  Relatedly, to the extent there was an inconsistency between the jurors as to whether Alternate Juror 3 had discussed the article with them, the trial court reasonably could have viewed the inconsistency as stemming from Alternate Juror 3 not having actually read the article and the other jurors not viewing Alternate Juror 3's

---

[5] Though the trial court denied Petitioner's motion for a mistrial, the court, upon consent of both Petitioner and the prosecutor, dismissed Alternate Juror 3 for failing to follow the court's directions regarding discussing the case with the other jurors.  (Tr. at 443:2–22.)

reference to it, if there was one, as a "discussion" about it, *i.e.*, its contents. Therefore, the trial court's finding of impartiality is not a manifest error. *See United States v. McDonough*, 56 F.3d 381, 386 (2d Cir. 1995) ("As to the others, it is difficult to see how jurors who are aware of the existence of a news article, but unaware of its content, could be prejudiced by such awareness.").

Plaintiff's second argument also fails. Petitioner is correct that the trial court failed to specifically ask whether the jurors who had seen the Newsday article picture had also read the accompanying headline or article. (Pet.'s R., Dkt. 11, at 58.) However, in response to the jurors' statements that they had seen a picture of Petitioner's trial counsel in the news, the trial court asked a sufficiently broad question to determine whether anything the jurors may have seen, including the article's headline, would impede their ability to be impartial. (*See, e.g.*, Tr. at 428:17–20 ("Was there *anything about what you saw* that would prevent you from being a fair and impartial juror and rendering your verdict solely on the evidence presented in this courtroom?") (emphasis added).) By framing the inquiry this way, the trial judge avoided drawing attention to the article's headline, which could have reminded the jurors about something they had already put out of their minds. The trial judge's decision to question the jurors in this manner is not a manifest error. *See Montanez*, 2018 WL 6268221, at *12 ("[A] trial court retains 'broad discretion' in taking action to fulfill its duty to ensure juror impartiality.") (quoting *Romance v. Bradt*, 391 F. App'x 89, 91 (2d Cir. 2010)).

There clearly is fair support in the record to support the trial court's finding of impartiality. Furthermore, Petitioner has provided no evidence to suggest that this finding is not presumptively correct. Accordingly, the Second Department's rejection of Petitioner's mistrial argument was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent; nor was it based on an unreasonable determination of the facts in light of the evidence

presented in the state trial proceedings. Petitioner's request for *habeas* relief on this ground is therefore denied.

## II.     Ineffective Assistance of Counsel Claim

"The Supreme Court in *Strickland* set forth a two-part test for evaluating claims of ineffective assistance of counsel. To warrant relief, a defendant must demonstrate both 'that counsel's performance was deficient' and 'that the deficient performance prejudiced the defense.'" *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Under *Strickland*'s first prong, counsel's conduct falls to the level of being deficient if 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Eze*, 321 F.3d at 125 (quoting *Strickland*, 466 U.S. at 687). Under the second prong, a counsel's conduct prejudiced the defense if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 123 (quoting *Strickland*, 466 U.S. at 688, 694).

"To prevail [on an ineffective assistance claim], a defendant must establish both of *Strickland*'s prongs because, otherwise, 'it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the process unreliable, and the sentence or conviction should stand.'" *Id.* (quoting *Bell v. Cone*, 535 U.S. 685, 695 (2002)). Furthermore, "[o]ur scrutiny of counsel's performance must be 'highly deferential' because we must apply 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015) (quoting *Strickland*, 466 U.S. at 689).

## A.    Failure to Impeach Prosecution Witnesses

Petitioner argues that his trial counsel's failure to impeach two key prosecution witnesses, Karl Keith and Jesse Merkelson, amounts to ineffective assistance of counsel.  (Petition, Dkt. 1, at ECF 5, 21.)  "Decisions about whether to engage in cross-examination, and if so to what extent and in what manner, are strategic in nature and generally will not support an ineffective assistance claim."  *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) (internal quotations, ellipsis, and citation omitted).  *But see Rodriguez v. Portuondo*, No. 01-CV-0547 (PAC), 2006 WL 2168314, at *10 (S.D.N.Y. Aug. 1, 2006) ("Petitioner is correct that failure to impeach key witnesses may, in some circumstances, rise to the level of ineffective assistance.").

Petitioner argues that sworn statements that Keith made to the police days after the shooting contradicted the testimony he gave at trial:

> Keith's sworn statement included demonstrable falsehoods: he falsely stated that a 'Nicolina' . . . brought him to Nassau County to meet up with Garner, falsely omitting mention of Merkelson and his involvement . . . [and] it referenced only a single meeting with [Petitioner] in the parking lot[—]which was consistent with [Petitioner's] account[—]but which contradicted Keith['s] and Merkelson's trial testimony that there were two meetings with [Petitioner] in two different parking lots.

(Petition, Dkt. 1, at ECF 21; *see also id.* ("Aside from reflecting lies and inconsistencies, the two statements, being sworn, demonstrated that both Keith and Merkelson were capable of lying under oath.").)  On direct examination, Keith stated that he did not remember giving a statement to the police, and Petitioner's trial counsel did not attempt to draw out this inconsistent testimony on cross-examination.  (Tr. at 516:7–11; *see also* 440 Opinion, Dkt. 7-3, at ECF 7 ("Keith testified at trial that he had no recollection of making the April 15, 2002 statement.").)

Petitioner's trial counsel's actions do not rise to unconstitutional ineffective assistance.  At trial, trial counsel's strategy was to avoid calling Keith a liar because he was such a sympathetic

witness (*cf.* Pet.'s R., Dkt. 11, at 40–41), and is thus presumptively reasonable. *See Jenkins v. New York State*, No. 02-CV-9331 (JSM), 2003 WL 21804846, at *2 (S.D.N.Y. Aug. 6, 2003) ("Petitioner's claim that his attorney did not use prior inconsistent statements of the undercover officer to impeach him involved only a matter of trial strategy, which as noted above, is left to the professional judgment of defense counsel, and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'") (citing *Strickland*, 466 U.S. at 689). Indeed, given that Keith testified on direct that he could not remember giving any statement in the days after the shooting because he was barely conscious (Tr. at 516:3–4 (testifying that he would "wake up for a minute or so and see someone and then basically go back to sleep")), not focusing on those days and Keith's recovery from a near-fatal shooting advanced the defense strategy of not making Keith, already a sympathetic witness, even more appealing to the jury. These strategic decisions by Petitioner's trial counsel do not constitute ineffectiveness. *See Lacey v. Perez*, No. 10-CV-1460 (SJF), 2013 WL 1339418, at *11 (E.D.N.Y. Mar. 28, 2013) (noting that counsel's concern that witness "would elicit the sympathy of the jury is not illegitimate"); *see also Eze*, 321 F.3d at 133 (holding that counsel was not ineffective when he "needed to draw out inconsistencies in the [witnesses'] stories, yet take caution not to cross the line by questioning these sympathetic witnesses too severely in the presence of the jury").[6]

---

[6] In its decision on Petitioner's 440 Motion, the County Court noted that, "[i]f Keith could not recall the statement to police and, therefore, was incapable of denying or explaining it, the foundation could not be laid to introduce it into evidence." (440 Opinion, Dkt. 7-3, at ECF 7.) While Petitioner's trial counsel reasonably could have considered this fact in deciding not to cross-examine Keith about his prior inconsistent statement, it is not correct that no "foundation could . . . be laid to introduce it into evidence" at trial. As Petitioner argues, trial counsel could have sought to introduce the statement through the officer who took it. (Petition, Dkt. 1, at ECF 21.) Although the officer's testimony would have constituted extrinsic evidence, the trial court could have exercised its discretion to admit the testimony, since it related to a material fact in the case, *i.e.*, what happened on the day of the shooting, and did not relate solely to Keith's credibility.

Likewise, trial counsel's failure to impeach Merkelson does not rise to the level of ineffective assistance of counsel. Petitioner argues that trial counsel was ineffective for failing to impeach Merkelson on prior sworn statements that "misrepresented the extent of his involvement in the narcotics transaction." (Petition, Dkt. 1, at ECF 21.) However, Merkelson was not present at the shooting[7] and the failed narcotics transaction was collateral to the main issues at Petitioner's trial. Therefore, the County Court correctly found that Petitioner's trial counsel "exercised his professional judgment" in choosing to not impeach Merkelson, since "[s]uch a strategy avoided 'burying good arguments . . . in a verbal mound made up of strong and weak contentions.'" (440 Opinion, Dkt. 7-3, at ECF 7 (quoting *Young v. McGinnis*, 411 F. Supp. 2d 278, 332 (E.D.N.Y. 2006)); *see also Harrington*, 562 U.S. at 107 ("An attorney can avoid activities that appear distractive from more important duties. Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies.") (internal quotations and citation omitted).

Therefore, the Court holds that the County Court's rejection of these claims was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court

---

*People v. Schwartzman*, 247 N.E.2d 642, 644–45 (1969); *see also Scrimo v. Lee*, No. 17-3434, 2019 WL 3924811, at *10 (2d Cir. Aug. 20, 2019).

    The County Court further noted that, "[i]n any event, defendant's moving papers concede that defense counsel did in fact refer to this prior statement at trial." (440 Opinion, Dkt. 7-3, at ECF 7.) This Court notes that after a review of both the papers supporting Petitioner's 440 Motion and the entire trial transcript, it does not appear that Petitioner's trial counsel ever explicitly noted that Keith had made these prior inconsistent statements. Nonetheless, the Court does not find that this fact is determinative of whether Petitioner's trial counsel was ineffective.

    [7] No evidence at trial contradicted Merkelson's testimony that he did not accompany Keith to the drug deal location and that he was not present when Keith was shot—including Petitioner's own testimony, in which Petitioner also claimed not to have gone to the drug deal location or to have been present when Keith was shot.

precedent; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state trial proceedings.

## B.    Abandonment of a Meritorious Hearsay Objection

Petitioner also argues that his trial counsel was ineffective because he abandoned a meritorious objection to Keith's hearsay identification of Petitioner as the shooter to the police officers who responded to the scene. (Petition, Dkt. 1, at ECF 21.)[8] Petitioner notes that though his trial counsel obtained a continuing objection[9] to this evidence before opening statements were

---

[8] Petitioner also seems to argue that his trial counsel failed to properly argue that Keith's statement was not an excited utterance, as the prosecution argued, because Keith had already proven himself to be capable of deception at the time he made those statements. (Petition, Dkt. 1, at ECF 21 (noting that "[u]nder New York law, the excited utterance exception does not apply if the declarant had already regained the capacity to fabricate" (citing *People v. Johnson*, 1 N.Y.3d 302, 307 (N.Y. 2003)))).) Specifically, Petitioner argues that trial counsel failed to highlight that Keith's ability to "play[] dead" in the moments after the shooting meant that Keith had "regained the capacity to fabricate, and indeed, claimed to have actually fabricated." (*Id.*) Though trial counsel did not make this specific factual argument, he did articulate some of the other factual considerations included in *People v. Johnson*, the caselaw that Petitioner argues trial counsel should have relied on in making his objection. (*Compare* Tr. at 273:16–19 (noting that an excited utterance applies only "where the police immediately arrive," which was not the case here) and Tr. at 274:7–11 ("So what you have is not an excited utterance. What you do have is hearsay. And because it's in response to questions being asked by an officer, it falls outside the excited utterance exception."), *with People v. Johnson*, 1 N.Y.3d at 306–07 (noting that factors to be considered in determining whether a statement is an excited utterance are, *inter alia*, "the period of time between the startling event and the out-of-court statement" and whether "the statements are made in response to police questioning").) "A petitioner will establish constitutionally inadequate performance when he shows that counsel 'omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.'" *Hunter v. Lee*, No. 13-CV-5880 (PAE) (RLE), 2016 WL 5939475, at *7 (S.D.N.Y. Sept. 2, 2016) (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)), *report and recommendation adopted*, No. 13-CV-5880 (PAE) (RLE), 2016 WL 5942311 (S.D.N.Y. Oct. 11, 2016). Petitioner does not meet this bar by arguing that trial counsel failed to make one specific factual argument, when trial counsel made the objection and supported it with logical arguments. *See id.* ("Counsel's performance will not be deemed unreasonable merely because she failed to advance every nonfrivolous argument.") (internal quotations, brackets, and citation omitted).

[9] "An objection that is clearly made and overruled serves as a continuing objection and renders it unnecessary to challenge other improper evidence of the same sort adduced from that

made at trial, Petitioner's counsel effectively waived that objection by referring to the hearsay statement in his opening (Petition, Dkt. 1, at ECF 21; *see also* Tr. at 292:11–20).

Although the County Court correctly rejected Petitioner's abandonment argument,[10] it appears not to have considered Petitioner's argument that, despite preserving for appeal Petitioner's objection to Keith's hearsay identification, Petitioner's trial counsel "abandoned" the objection by referencing the identification in his own opening statement and that this amounted to ineffective assistance. (Petition, Dkt. 1, at ECF 21 ("[Trial counsel], however, did not wait until the prosecution sought to lay the foundation during the testimony of the police. He abandoned the objection in his opening statement in which he told the jury of the statements himself.").) However, even assuming *arguendo* that the County Court's decision was unreasonable to the extent that it did not address this argument, *see* 28 U.S.C. § 2254(d), this Court, upon *de novo* review, finds that the trial counsel's actions do not amount to ineffective assistance of counsel. *See Lopez v. Miller*, 906 F. Supp. 2d 42, 50 (E.D.N.Y. 2012) ("[W]hen faced with a claim for habeas relief that was adjudicated on the merits in state court, the court must first ask whether the state court's adjudication of the claim was unreasonable under § 2254(d). If so, the court may nonetheless grant habeas relief only if the petitioner has shown a violation of federal law under § 2254(a)."); *see also id.* (noting that this second analysis under § 2254(a) is done *de novo*).

As Petitioner himself acknowledges, "[o]nce Keith's at-the-scene statements were admitted, [trial counsel] failed, *consistently with his decision not to challenge Keith's honesty*, to

_____

witness." (440 Opinion, Dkt. 7-3, at ECF 6 (citing *Kulak v. Nationwide*, 40 N.Y.2d 140 (N.Y. 1976)).)

[10] The County Court found that "[t]he record before the Court does not support defendant's claim that there was 'abandonment' of the continuing objection" (440 Opinion, Dkt. 7-3, at ECF 6) because state law does not require that counsel, once an objection is clearly made and overruled, to continue to object to "other improper evidence of the same sort" (*id.*).

argue that Keith was already capable of, and, indeed, engaging in, deception at the time he made those statements." (Pet.'s R., Dkt. 11, at 44 (emphasis added).) Furthermore, though Petitioner is right that the trial court granted Petitioner a continuing objection (Tr. at 277:5–14), the court made clear that it anticipated admitting Keith's hearsay statements, including his identification of Petitioner, under the excited utterance exception:

> But for right now, so we can get moving, I'm gonna permit the People to put the officer on and question him as to what was said or what the victim said as an exception to the hearsay rule. Normally it's a question of foundation. I believe the People will be able to put in a proper foundation. You will make your objection and take your exception when we get that far, Mr. Lemke [trial counsel]. But I do believe, although there may have been an interval between the event and the statements, I think it's still within the excitement of a stressful situation.

(Tr. at 276:16–277:4.) Given these statements by the court, trial counsel's decision to attempt to blunt the harmful impact of this evidence against Petitioner by disclosing it in his opening statement is a strategic decision, and one that does not support finding that trial counsel provided ineffective assistance. *See Gibbs v. Donnelly*, 673 F. Supp. 2d 121, 139 (W.D.N.Y. 2009) ("The Second Circuit has stated that in case after case, it has declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox or downright ill-advised.") (internal quotations and citation omitted).[11]

---

[11] The Court notes that in evaluating Petitioner's claims under *Strickland*, it is not bound to apply the factors in any particular order. *Garner*, 908 F.3d at 861 ("The *Strickland* Court also declared, however, that there is no reason for a court to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant.") (internal quotations, ellipsis, and citation omitted). Though some of Petitioner's grounds for his ineffective assistance claim clearly fail to satisfy the prejudice prong, *see infra*, three of Petitioner's grounds, discussed *supra*, directly attack the strength of the prosecution's case, which has been determined by the Circuit to be "overwhelming." *See id.* at 861, 863, 865, 871; *see also Harris v. Senkowski*, 298 F. Supp. 2d 320, 338 (E.D.N.Y. 2004) ("There are a number of case precedents in this circuit and in New York State courts railing against counsel's

## C.    Remaining Grounds

Finally, Petitioner offers four other grounds to support his argument that his trial counsel provided ineffective assistance. Petitioner argues that his trial counsel was ineffective because he: (1) pursued a trial strategy that did not have adequate support (Petition, Dkt. 1, at ECF 20); (2) mistakenly referenced the second meeting location in his opening statement, in direct contravention of Petitioner's version of events that there was only one meeting location (*id.* at ECF 22); (3) failed to object when Keith's father, a physician's assistant who testified only as a lay witness, drew conclusions about where Keith was shot and from what distance based on his observations of the gunshot wound (*id.* at ECF 22); and (4) failed to move to re-inspect grand jury minutes after determining that the indictment was based on hearsay (*id.* at ECF 21–22).

These remaining claims are unavailing. Trial counsel is not ineffective for pursuing a losing strategy, *see Eze v. Senkowski*, 321 F.3d at 125 (The Court "must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'") (quoting *Strickland*, 466 U.S. at 689); *see also Harrington*, 562 U.S. at 107 ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies."), nor for making a mistake, *Morris v. Garvin*, No. 98-CV-4661 (JG), 2000 WL 1692845, at *3 (E.D.N.Y. Oct. 10, 2000) (noting that criminal defendants

---

ineffectiveness for failing to challenge identification witnesses with prior inconsistent statements, be they sworn or unsworn, and whether or not made to law enforcement authorities, especially when, as here, the prosecution turned on the identifying witness' testimony."). Therefore, in an abundance of caution, the Court considered these three grounds on *Strickland*'s first prong, according the proper deference to the County Court's determination on the merits, rather than addressing these grounds on *Strickland*'s second prong.

"are not entitled to error-free, perfect representation"), such as referencing a fact in an *opening* statement that is inconsistent with the defense's theory of the case.[12]

Trial counsel is also not ineffective for declining to pursue collateral issues, such as the details of a shooting that Petitioner denies committing. (*See* 440 Opinion, Dkt. 7-3, at ECF 8 ("The defense at trial was simply that [Petitioner] did not commit these crimes. Factual evidence of the location of the gunshot wound and the distance from which the gun was fired were collateral issues."); *see also Harrington*, 562 U.S. at 107 ("An attorney can avoid activities that appear distractive from more important duties. Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies.") (internal quotations and citation omitted). The County Court reasonably concluded that given the nature of Petitioner's defense, his trial counsel was not ineffective for failing to challenge evidence relating to the actual shooting, since this evidence was irrelevant and extraneous to Petitioner's defense, and focusing on that evidence would have distracted Petitioner's trial counsel from other relevant evidence, investigation, and argument.

Finally, though generally "[c]laims of alleged deficiencies in state grand jury proceedings are not cognizable on federal habeas corpus review," *Hirsh v. McArdle*, 74 F. Supp. 3d 525, 533 (N.D.N.Y. 2015), "the Sixth Amendment right to the effective assistance of counsel can be violated if counsel failed to raise a significant and obvious state law claim," *LanFranco v. Murray*, 313 F.3d 112, 118 (2d Cir. 2002). Here, however, as the County Court noted, "[t]here is no statutory

---

[12] Petitioner's argument about his trial counsel having mistakenly referenced a second meeting location in his opening, in particular, suffers from the additional infirmity that Petitioner cannot demonstrate that but for this mistake, he would not have been convicted. *Strickland*, 466 U.S. at 694. As the Circuit has found, the evidence of Petitioner's guilt was "overwhelming." *Garner*, 980 F.3d at 861, 863, 865, 871. Furthermore, given that opening statements are neither evidence nor even argument, the Court finds that the impact of the erroneous statement at issue here was nil.

authority for reinspection . . . [and it] would have violated the doctrine of the law of the case by reviewing a matter which already had been the subject of the June 4, 2002 determination by the Court."  (440 Opinion, Dkt. 7-3, at ECF 6.)  With no basis in state law to object to the alleged deficiencies in the indictment, petitioner's trial counsel was not ineffective for failing to file an unfounded motion.

Moreover, even if it is assumed, *arguendo*, that the County Court unreasonably applied *Strickland*'s first prong on any of these four grounds, it is clear that these claims nonetheless fail to satisfy *Strickland*'s prejudice prong and therefore do not support Petitioner's argument that he received ineffective assistance of counsel.  "The prejudice inquiry is . . . ineluctably tied to the strength of the prosecution's evidence."  *Garner*, 908 F.3d at 862; *see also Waiters*, 857 F.3d at 480 ("[A] verdict or conclusion with ample record support is less likely to have been affected by the errors of counsel than 'a verdict or conclusion only weakly supported by the record.'") (quoting *Strickland*, 466 U.S. at 696).  These remaining claims do not address the prosecution's case and Petitioner "therefore bears a heavy burden, to say the least, in demonstrating that his attorney's allegedly serious errors at trial merit the grant of habeas relief."  *Garner*, 908 F.3d at 865 (internal quotations and citation omitted); *cf. id.* at 864 (noting that "[i]n stark contrast to the prosecution's case-in-chief, [Petitioner] presented a thin and wholly uncorroborated narrative during his defense case, which was riddled with damaging holes").

\*      \*      \*

Accordingly, *habeas* relief is denied on Petitioner's ineffective assistance of counsel claim.

## CONCLUSION

For the reasons set forth above, the petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 is denied.  Petitioner is denied a certificate of appealability, as he has failed to make

a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Middleton v. Att'ys Gen.*, 396 F.3d 207, 209 (2d Cir. 2005) (denying certificate of appealability where petitioner has not shown that "reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (quotations and ellipsis omitted). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*

Pamela K. Chen
United States District Judge

Dated: September 20, 2019
        Brooklyn, New York